IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK KERMIT BENNETT,           :      No. 4:06-cv-1998
            Petitioner,        :
                               :      (Judge Jones)
            v.                 :
                               :      (Magistrate Judge Smyser)
GERALD ROZUM, *et al.*,        :
            Respondents        :

**MEMORANDUM**

April 1, 2008

This matter is before the Court on the report of Magistrate Judge J. Andrew Smyser (Doc. 40) which recommends that the Petitioner Mark Kermit Bennett's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be denied. Bennett filed objections to the report (Doc. 44), and the Respondents have filed a brief in opposition to these objections (Doc. 46).  For the reasons set forth below, the Court will adopt the Magistrate Judge's recommendation and deny the petition.

I.    **STANDARD OF REVIEW**

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or

1

recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. §

636(b)(1) permits whatever reliance the district court, in the exercise of sound

discretion, chooses to place on a magistrate judge's proposed findings and

recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423

U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

## II.   BACKGROUND

### A.   State Court Proceedings

On June 12, 2002, a jury in the Dauphin County Court of Common pleas

found Bennett guilty of criminal conspiracy to commit murder.  The Pennsylvania

Superior Court briefly summarized the facts related to the charge as follows:

> On May 27, 2000, Marjorie Raymonds ("Raymonds") was shot in the
> head and killed while walking near Shrub Street in Harrisburg,
> Pennsylvania.  The shooting occurred while Maria Tate ("Tate") was
> walking with Raymonds. Tate witnessed co-defendant, Marvin Robinson
> ("Robinson") pull up in a car while [Bennett] rode in the passenger seat
> holding a gun.  Tate turned her head, heard a gunshot and saw Raymonds
> fall to the ground.  The car then drove off.

(Doc. 8 at 2.)  On August 29, 2002, Bennett was sentenced to 230 to 480 months of

imprisonment on the conspiracy charge.[1]  (Doc. 21 at 3.)

---

[1] Bennett also pled guilty to state drug charges that had been severed from the murder
trial.  He received a 16 to 60 month sentence on those charges sentences to run consecutively
with his sentence on the conspiracy charge.

Pursuant to Pennsylvania Rule of Appellate Procedure 1925, Bennett's trial counsel prepared a statement of the eight errors Bennett complained of on appeal.[2] (Doc. 8, Ex. A.)  By order of November 14, 2002, the trial court rejected these arguments.  (Doc. 8, Ex. B.)  Bennett's trial counsel then filed a direct appeal with the Superior Court, raising only one of these eight issues a ground for relief:

> WHETHER THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW APPELLANT TO INTRODUCE EVIDENCE OF A CALL TO 911 DISPATCH WHICH CONTRADICTED THE COMMONWEALTH'S MAIN WITNESS?

(Doc. 8, Ex. C.)  By order of August 11, 2003, the Superior Court rejected this claim and affirmed the judgment of sentence.  (Doc. 8, Ex. D.)  Bennett did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On March 19, 2004, Bennett filed a pro se petition for review under the Pennsylvania Post Conviction Relief Act ("PCRA").  (Doc. 8, Ex. E.)  Counsel was

---

[2] Rule 1925 provides, in relevant part:

(a) General rule. – Upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found. ...

(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.– If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

appointed for Bennett, and on December 23, 2004, Bennett filed, through counsel,
an amended PCRA petition.  (Doc. 8, Ex. F.)  The amended petition raised only one
ground for relief: that appellate counsel was ineffective for failing to pursue
numerous appealable issued, which were originally raised with the trial court in the
statement of matters complained of on appeal.  (*Id.* at ¶¶ 7-8, 13-14.)  The PCRA
court dismissed the petition by order of July 21, 2005.  (Doc. 8, Ex. J.)  Bennett
appealed to the Superior Court, raising one ground for relief:

> WHETHER THE PCRA COURT ERRED IN DETERMINING THAT
> TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO
> PERFECT NUMEROUS ISSUES ON DIRECT APPEAL WHERE
> APPELLANT HAD MADE A TIMELY REQUEST AND THE ISSUES
> WERE INCLUDED IN THE STATEMENT OF MATTERS
> COMPLAINED OF?

(Doc. 8, Ex. K.)  By order of April 10, 2006, the Superior Court affirmed denial of
the PCRA petition.  (Doc. 8, Ex. L.)  Bennett did not file a petition for allowance of
appeal to the Pennsylvania Supreme Court.

### B.    Federal Habeas Proceedings

Bennett filed the present § 2254 petition on October 11, 2006, raising four
grounds for relief:

1.    That Petitioner's Due Process Rights were violated when the

      Trial Court convicted him of Conspiracy to Commit Murder

Third Degree when the jury returned only a verdict of "guilty" to

Conspiracy in general.

2.      That the Petitioner was denied Due Process when that Trial

Court refused to allow the defense to introduce exculpatory

evidence consisting of records of a 911 call.

3.      That Petitioner was denied the effective assistance of counsel.

4.      That the Petitioner was denied Due Process when the Trial Court

misled the jury during the charge to the jury and during jury

deliberations.

(Doc. 1; Doc. 21 at 9.)  Respondents filed an answer to the petition on December 5,

2006.  (Doc. 8.)  On March 7, 2007, counsel was appointed to represent Bennett.

(Doc. 14.)  On June 22, 2007, Bennett, through counsel, filed a brief in support of

his petition.  (Doc. 21.)  An evidentiary hearing was conducted on October 24,

2007, and the parties thereafter field supplemental briefs.  (Docs. 38, 39.)

## C.      The Report and Recommendation

On November 16, 2007, the Magistrate Judge entered a report which

recommends that Bennett's petition be denied.  (Doc. 40.)  The report concludes

that all four of Bennett's habeas claims are procedurally defaulted.  The report also

concludes that Bennett has not proven actual innocence so as to excuse his

procedural default.  Alternatively, the report concludes that Bennett's third claim,

ineffective assistance of appellate counsel, is without merit.

Bennett, through counsel, objects to the Magistrate Judge's finding that his

second and third claims are procedurally defaulted, that his ineffective assistance

claim is without merit, and that he has not demonstrated actual innocence.  (Docs.

43, 44).  Respondents filed a brief in opposition to these objections.  (Doc. 46.)  The

matter is now ripe for the Court's review.

## III.   DISCUSSION

### A.   Procedural Default

Before a federal court may review the merits of a § 2254 petition, the

petitioner must demonstrate exhaustion of state court remedies and lack of

procedural default.  Section 2254(b) provides that "[a]n application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a State

court shall not be granted unless it appears that the applicant has exhausted the

remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  "An

applicant shall not be deemed to have exhausted the remedies available in the courts

of the State ... if he has the right under the law of the State to raise, by any available

procedure, the question presented."  28 U.S.C. § 2254(c).  To exhaust available

state court remedies, a petitioner must "fairly present" his claim through one

complete round of the state's established appellate review process by presenting to

the state courts the same factual and legal basis for the claim that he raises on

habeas review.[3] *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007). "The habeas

petitioner carries the burden of proving exhaustion of all available state remedies."

*Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005) (quoting *Lambert v. Blackwell*,

134 F.3d 506, 513 (3d Cir. 1997)).

If a petitioner fails to fairly present a claim to the state courts, and state

procedural rules bar him from now doing so, the exhaustion requirement is satisfied

because there is literally "an absence of available State corrective process" under 28

U.S.C. § 2254(b). *Whitney v. Horn,* 280 F.3d 240, 252-53 (3d Cir. 2002). In such a

case, however, the petitioner has procedurally defaulted his claim, and federal

courts may not consider the merits of such a claim unless the petitioner establishes

"cause and prejudice" or a "fundamental miscarriage of justice" to excuse the

default. *Id.* Even when a petitioner properly exhausts a claim, a federal court may

not review it on the merits if a state court's decision rests on a violation of a state

---

[3] On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 which declares that federal habeas petitioners do not have to appeal to the Pennsylvania Supreme Court to satisfy the exhaustion requirement. The Third Circuit has recognized the validity of this Order, *see Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004), *cert. denied*, 544 U.S. 1063 (2005), and therefore a federal petitioner under custody pursuant to the judgment of a Pennsylvania court need only appeal to the Pennsylvania Superior Court to exhaust available state remedies.

procedural rule that is independent of the federal question presented and adequate to support the judgment. *Id.*; *Leyva v. Williams*, 504 F.3d 357, 365-66 (3d Cir. 2007).

In this case, the Magistrate Judge concluded that all of Bennett's habeas claims are procedurally defaulted. Bennett objects to the findings that his second and third claims are defaulted. The Court agrees that Bennett's first, second, and fourth claims are procedurally defaulted and will dismiss these claims on this ground. The Court, however, will sustain Bennett's objection regarding the procedural default of his third claim.

### 1.    First and Fourth Due Process Claims

Bennett concedes that he did not present his first or fourth habeas claims to the state courts and that state procedural rules bar him from now doing so. The Magistrate Judge, therefore, correctly concluded that these claims are procedurally defaulted.   Bennett does not object to this conclusion.  Bennett does not argue cause for and prejudice resulting from his procedural default.[4]  Bennett's claim of actual innocence which would excuse the default is discussed below.

### 2.    Second Due Process Claim

Bennett objects to the Magistrate Judge's conclusion that his second habeas claim – that he was denied due process when that trial court refused to allow the

---

[4] Nor would the Court find cause and prejudice here.

8

introduction of an allegedly exculpatory 911 call – is procedurally defaulted.  (Doc. 43 at ¶ 6.)  Bennett's brief in support of his objections, however, provides no argument as to why this claim is not procedurally defaulted.  The Court finds that the Magistrate Judge's conclusion is correct and will overrule this objection.

In the brief in support of his petition, Bennett argues that his second habeas claim was raised on direct appeal to the Superior Court.  (*See* Doc. 21 at 10.)  That is not the case.  As noted above, Bennett raised a single issue on direct appeal:

> WHETHER THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW APPELLANT TO INTRODUCE EVIDENCE OF A CALL TO 911 DISPATCH WHICH CONTRADICTED THE COMMONWEALTH'S MAIN WITNESS?

(Doc. 8, Ex. C. at 4, 8.)  As the "Statement of Scope and Standard of Reivew", Bennett provided:

> The admission of a hearsay statement and the admission of evidence is committed to the sound discretion of a trial court and will not be reversed absent an abuse of discretion.  Discretion is abused where the law is not applied.

(*Id.* at 2 [citations omitted].)  Bennett argued that, while the 911 call was hearsay, it should have been admitted pursuant to the excited utterance or present sense impression exceptions to the hearsay rule.  (*Id.* at 10-12.)  Bennett summarized his argument as follows:

> The trial court erred by denying the admission of the content of a 911 call qualified for admission under the <u>res gestae</u> exceptions to the hearsay

9

> rule, pursuant to either the excited utterance exception of the present
> sense impression exception.   The call in question contradicted the
> Commonwealth's main witness, a person whose credibility was an
> essential focus of the defense.

(*Id.* at 7.)

As these excerpts make clear, Bennett presented to the Superior Court only a state-law evidentiary question, without presenting the legal or factual basis for a due process claim.  The Superior Court, understandably, treated Bennett's argument only as a claim of evidentiary error and did not find an abuse of discretion justifying a reversal of the trial court's decision on admissibility.  (Doc. 8, Ex. D at 3-4.) Bennett thus did not fairly present a due process claim based on the exclusion of the 911 call to the state courts, and therefore, has procedurally defaulted this claim.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (rejecting petitioner's argument that he fairly presented a due process claim to the state courts by arguing evidentiary error on direct appeal).

### 3.       Ineffective Assistance Claim

The Magistrate Judge concluded that Bennett presented to the state courts a claim that he was denied the right to appeal, rather than a claim that his counsel was ineffective in violation of the Sixth Amendment, and thus did not fairly present his ineffective assistance claim.  (Doc. 40 at 12.)  Recognizing, however, that it is "arguable" that Bennett presented this claim, the Magistrate Judge went on to

address the merits of the claim.  (*Id.* at 12, 13-15.)  Bennett objects to this finding,

arguing that he made an ineffective assistance claim in his PCRA petition and

appeal and that the state courts, while not explicitly relying on federal law,

addressed the claim under a standard analogous to *Strickland v. Washington*, 466

U.S. 668 (1984).

In his amended PCRA petition, Bennett argued that he was entitled to relief

because of the "[i]neffective assistance of counsel which ... so undermined the truth

determining process that no reliable determination of guilt or innocence could have

taken place" in "[v]iolation of the Constitution of Pennsylvania or laws of this

Commonwealth or the Constitution of the United States."  (Doc. 8, Ex. F ¶ 13.)

Specifically, Bennett argued that his counsel was ineffective because of his

"apparent inaction in pursuing numerous appealable issues."  (*Id.* at ¶ 14.)

The PCRA court issued a notice of intention to dismiss the petition, stating

that Bennett had failed to argue (1) that his underlying claims had arguable merit,

(2) that his counsel did not have a reasonable basis for his act or omission, and (3)

that counsel's act or omission had an adverse effect on the outcome of the

proceeding,  as required by Pennsylvania law to show ineffective assistance of

counsel.  (Doc. 8, Ex. G.)  In response, Bennett argued that he need not meet this

three-prong test because under *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999),

an attorney's unjustified failure to take a direct appeal amounts to actual or
constructive denial of counsel and prejudice may be presumed from such a denial.
(Doc. 8, Ex. H.)  The PCRA court dismissed the petition and rejected this argument
based on Pennsylvania case law distinguishing between cases where counsel failed
to take an appeal at all and cases where counsel merely did not raise on appeal all
issues requested by the defendant.  (Doc. 8, Ex. J.)  Bennett raised the same
argument on appeal to the Superior Court.  (Doc. 8, Ex. K.)  The Superior Court
rejected the argument for the same reasons as the PCRA court:  Bennett's counsel
had, in fact, perfected an appeal, and Bennett could not demonstrate that counsel
was ineffective for failing to raise other issues on appeal without meeting the three-
prong test.  (Doc. 8, Ex. L.)

As an initial matter, the Court will sustain Bennett's objection to the
Magistrate Judge's conclusion that he did not present the same claim both here and
to the state courts.  Before the state courts, Bennett did argue, as found by the
Magistrate Judge, that his counsel's inaction resulted in the denial of an appeal.
This argument, however, was made for the purposes of establishing a presumption
of prejudice in support of Bennett's broader ineffective assistance claim.

The question remains whether Bennett fairly presented the *federal* nature of
his ineffective assistance claim to the state courts.  Bennett's PCRA petition

asserted that his counsel's ineffective assistance violated the Constitution of the United States.  Because of his argument of a presumption of prejudice, based on *Lantzy*, Bennett did not engage in the three-prong analysis for ineffective assistance claims under Pennsylvania law or the analogous federal test articulated in *Strickland*.  Bennett did, however, acknowledge these tests would be the standard but for his presumption argument, and cited to Untied States Supreme Court and Court of Appeals precedent applying the *Strickland* test in support of that argument. (*See* Doc. 8, Ex. K at 12.)

Under these circumstances, the Court finds that Bennett fairly presented his federal ineffective assistance claim to the state courts.  Before both state and federal courts, Bennett has argued that counsel was ineffective for raising only one of eight identified issues on appeal, and thus presented the "factual and legal substance" of the claim to both courts.  *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) and *Picard v. Connor*, 404 U.S. 270, 277-78 (1971)).  Bennett also fairly presented the issue to the state courts by relying on federal cases employing the constitutional analysis set forth in *Strickland*.  *Id.* at 261-62 (citing *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1232 (3d Cir. 1992) *cert. denied*, 506 U.S. 1089 (1993)).  Furthermore, although Bennett relied primarily on state law and the state courts decided his claim under

state law, both Pennsylvania and federal courts have recognized that the Pennsylvania and federal standards for deciding claims of ineffective assistance of counsel are the same. *See, e.g.*, *Rompilla v. Horn*, 355 F.3d 233, 248-49 (3d Cir.2004), *rev'd on other grounds*, *Rompilla v. Beard*, 545 U.S. 374 (2005); *Werts v. Vaughn*, 228 F.3d 178, 202-03 (3d Cir.2000); *Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (1987). The Third Circuit has held that a petitioner who presents a claim to the state courts which is decided under identical state and federal standards has given the state courts notice of the legal and factual substance of his claim, and that this satisfies the fair presentation rule. *See Nara*, 488 F.3d at 197-98; *McCandless*, 172 F.3d at 261; *Evans*, 959 F.2d at 1231. For these reasons, the Court finds that Bennett fairly presented his ineffective assistance claim, and therefore, has exhausted his available state remedies as to this claim.

### B.    Actual Innocence

Bennett objects to the Magistrate Judge's conclusion that he has failed to present a valid claim of actual innocence so as to excuse the procedural default of his first, second, and fourth habeas claims. The Court will overrule this objection.

Procedural default does not bar federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result

in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[5] Proving a fundamental miscarriage of justice, "requires the habeas petitioner to show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* This test places "a very high burden" on the petitioner and is only satisfied in "extraordinary instances." *Goldblum v. Klem*, 510 F.3d 204, 225 (3d Cir. 2007) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)); *see also Schlup*, 513 U.S. at 327, 330 (stating actual innocence standard "ensures that petitioner's case is truly extraordinary" and "requires a substantial showing"). The petitioner's default is excused only if he "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316.

The Third Circuit has set forth a two-step inquiry a court must take in deciding a claim of actual innocence. *Goldblum*, 510 F.3d at 225 (citing *Hubbard*

---

[5] As noted above, Bennett does not argue cause and prejudice to excuse his procedural defaults, nor would the Court find cause and prejudice in this case.

*v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004), *cert. denied*, 543 U.S. 1070 (2005)).

"First, a court must decide whether the petitioner has presented new reliable

evidence  not presented at trial." *Id.* (citation, alterations omitted).  The Supreme

Court has explained that "a substantial claim that constitutional error has caused the

conviction of an innocent person is extremely rare.  To be credible, such a claim

requires a petitioner to support his allegations of constitutional error with new

reliable evidence ... that was not presented at trial." *Id.* (quoting *Schlup*, 513 U.S. at

324).  "Without any new evidence of innocence, even the existence of a concededly

meritorious constitutional violation is not in itself sufficient to establish a

miscarriage of justice that would allow a habeas court to reach the merits of a

barred claim." *Id.* (quoting *Schlup*, 513 U.S. at 316).

Only if a petitioner presents new, reliable evidence to support his claim does

the court reach the second step of determining "whether it is more likely than not

that no reasonable juror would have convicted him in light of the new evidence." *Id.*

(quoting *Hubbard*, 378 F.3d at 340).  "In making this second inquiry, a court 'must

consider all the evidence, old and new, incriminating and exculpatory, without

regard to whether it would necessarily be admitted under rules of admissibility that

would govern at trial,' and 'assess how reasonable jurors would react to the overall,

newly supplemented record.'" *Id.* at 225-26 (quoting *House v. Bell*, 547 U.S. 518,

16

537-38 (2006)).  This standard "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.  It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.  Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id.* (quoting *Schlup*, 513 U.S. at 329).

The only new evidence that Bennett presents to support his claim of actual innocence is the 911 phone call that he claims was improperly excluded from trial. Bennett claims the tape of this phone call would have contradicted the testimony of Maria Tate, the prosecution's main witness.  The utter unreliability of this evidence, however, was the very reason it was excluded from trial.  As the Court of Common Pleas explained:  "the hearsay statements made by an unidentified 911 caller who possibly did not even witness the actual shooting were inadmissible because there was an insufficient indicia of reliability."  (Doc. 8, Ex. B at 6.)  Neither before the state courts nor here did Bennett corroborate the vague and unreliable statements on

the 911 call with any additional evidence to bolster their reliability.  Bennett, therefore, has not met his burden at step one of the actual innocence test.

Even if the Court were to consider the statements on the call, this evidence would be insufficient to show that no reasonable would have found Bennett guilty. Several minutes after the shooting, the unnamed 911 caller stated that a black male wearing a blue/black jacket assaulted a female and then ran toward a house with a gray door on Summit Street.  (*See* Resp'ts' Supp. App. of Exs., Ex. W at 148.) There is no indication who the caller was, who the blue/black jacket-wearing male was, who the assaulted female was, or whether the caller was even describing the shooting.  The only connection between the call and the incident at issue is their temporal proximity (about five minutes) and the fact that the person described in the call ran into a house a few blocks from where the victim was found.  Even assuming that the 911 caller was describing the shooting, there is little reason to believe that, without further corroborating evidence, a reasonable juror would credit the vague and anonymous 911 call over the testimony of Maria Tate who, despite some credibility issues, was an eyewitness to the killing and was standing next to victim when she was shot.  Therefore, even if he could make it to the second step of the actual innocence analysis, Bennett has not met the high burden of demonstrating that no reasonable juror would have found him guilty.

Because he has not demonstrated actual innocence, Bennett has not shown that a fundamental miscarriage of justice will result from his procedural default, and therefore, his first, second, and fourth habeas claims will be dismissed.

### C.      Ineffective Assistance of Counsel

Because the Court finds that Bennett did fairly present his ineffective assistance of counsel claim to the state courts, we may proceed to the merits of that claim.  The Court agrees with the conclusion of the Magistrate Judge that Bennett's counsel was not constitutionally ineffective for failing to pursue additional claims on direct appeal and will deny Bennett's claim.

A federal habeas court's review is limited by the deference owed to the state courts' decisions on the merits.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" or "unreasonable application" of federal law standard of review mandated by § 2254(d)(1) requires a three-step process. *See Outten v. Kearney*, 464 F.3d 401, 413 (3d Cir. 2006).   First, the court must identify the "clearly established Federal law, as determined by the Supreme Court of the United States" applicable to the petitioner's claims. *Williams v. Taylor*, 529 U.S. 362, 389-91 (2000); *Outten*, 464 F.3d at 414.   "That statutory phrase refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

Next, the court must determine whether the state-court decision was "contrary to" the identified federal law. *Outten*, 464 F.3d at 413.   A state-court decision is contrary to federal law if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *Williams*, 529 U.S. at 405-06.   A state-court decision is not "contrary to" federal law merely because the federal court considering the prisoner's habeas application might reach a different result. *Id.* at 406.   Rather, to satisfy § 2254(d)(1), the petitioner must show that the state-court decision was "substantially different" from Supreme Court precedent. *Id.* at 405. .

If the state court decision is not "contrary to" Supreme Court precedent, the

court must then determine if the decision was based on an "unreasonable application of" such precedent. *Id.* at 413-14. A state-court decision involves an "unreasonable application" of federal law if the state court identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case. *Williams*, 529 U.S. at 407-08. A state-court decision also involves an "unreasonable application" of federal law if it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See id.* at 408-09; *see also Outten*, 464 F.3d at 413. Importantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Williams*, 529 U.S. at 410. The court is "not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices. Instead, the state court's application of Supreme Court precedent must have been objectively unreasonable, that is, the federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 414.

21

In this case, the Pennsylvania courts' rejection of Bennett's ineffective assistance claim was neither contrary to nor an unreasonable application of federal law.  A defendant alleging ineffective assistance must satisfy the familiar two-part test set forth in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms."  *Id.* at 687-88.  "Judicial scrutiny of counsel's performance must be highly deferential ... [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  To prove prejudice, the defendant must show that counsel's deficient performance "actually had an adverse effect on the defense."  *Id.* at 693.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.*  Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Bennett alleges that his counsel was ineffective for pursuing on appeal only one of the eight issues identified in his Rule 1925 statement.  As the Magistrate Judge's report notes, Bennett's counsel testified that he raised only the single issue on appeal because he considered that issue to be the one most likely to have merit and because he determined the other issues identified in the Rule 1925 statement lacked merit.  (Doc. 40 at 14; Doc. 25.)  Counsel's decision to pursue only the strongest claim and to not detract from that claim by also raising weaker arguments was not objectively unreasonable.

It is a well established principle that counsel, in the exercise of professional judgment, decides which issues to pursue on appeal, and there is no duty to raise every possible claim. *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible." *Jones*, 463 U.S. at 751.  "Appealing losing issues 'runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions.'" *Sistrunk*, 96 F.3d at 670 (quoting *Jones*, 463 U.S. at 753).  "Indeed, the 'process of winnowing out weaker

arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Id.* (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

Bennett's counsel's decision to separate the wheat from the chafe and focus solely on the issue most likely to succeed falls well within the wide range of objectively reasonable professional conduct that satisfies that Sixth Amendment guarantee of affective assistance of counsel.  The state-court decisions rejecting Bennett's ineffective assistance claim are therefore not "contrary to" or "unreasonable applications" of federal law, and Bennett's habeas petition will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court will adopt the recommendation of the Magistrate Judge to deny Bennett's habeas petition.  Bennett's first, second, and fourth claims are dismissed with prejudice as procedurally defaulted.  *See Lines v. Larkins*, 208 F.3d 153, 155 (3d Cir. 2000).  While the Court finds that Bennett's ineffective assistance claim is not procedurally defaulted, this claim will be denied on the merits.  An appropriate order, in accordance with this memorandum, will be entered.